### MEEHAN v. DOBSON.

(Supreme Court, Trial Term, New York County.  July 3, 1911.)

1. TAXATION (§ 792*)—ACTION FOR POSSESSION—TITLE TO SUPPORT ACTION.
   Where, in an action to recover land, defendant's right to possession is based on a tax lease executed by New York City, plaintiff must recover upon the strength of his own title, and not upon the weakness of defendant's title.
   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 792.*]

2. TAXATION (§ 810*)—ACTIONS—SUFFICIENCY OF EVIDENCE.
   Evidence, in an action to recover land, wherein defendant's right to possession is based upon a tax lease executed by New York City, held not to show that the person from whom plaintiff claimed title left any father or mother as heirs.
   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 810.*]

3. TAXATION (§ 811*) — ACTIONS — "ESTATE" — TITLE TO SUPPORT ACTION— PLAINTIFF'S ESTATE—NECESSITY OF PROOF.
   Since, under Code Civ. Proc. § 1519, requiring the verdict in ejectment to specify the estate of plaintiff in the property recovered, a verdict not defining plaintiff's estate is fatally defective, plaintiff's proof of the estate owned by him is a condition precedent to recovery in ejectment; the term "estate" being defined as the quantity of interest which one has in land.
   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 811.*
   For other definitions, see Words and Phrases, vol. 3, pp. 2475–2488; vol. 8, pp. 7653, 7654.]

Action by one Meehan against one Dobson. Complaint dismissed.

Merle J. St. John, for plaintiff.
Peter Egan, for defendant.

GREENBAUM, J.  [1] Where, as here, the defendants' right to possession of the premises in question is based upon a tax lease executed by the city of New York, a recovery by the plaintiffs must rest upon the strength of their own title, and not upon the weakness of that of the defendants. Deering v. Reilly, 167 N. Y. 184, 190, 60 N. E. 447. To my mind there are two serious defects in the proofs submitted in behalf of the plaintiffs: First assuming that John T. McGowan died intestate, seised of the fee, the property would descend "to the brothers and sisters both of the father and mother of the intestate and their descendants."

---

[2] There is no evidence in this case of the failure of heirs of the father of McGowan. The testimony of the two witnesses produced in behalf of the plaintiffs, taken in its most favorable aspects, merely evidences that the deceased, McGowan, had never spoken to them about his father or his heirs. This is far from a declaration that the deceased had stated that there were no heirs of his father or that he knew of none such. An omission to mention heirs is not equivalent to a declaration that there were no heirs. Under the state of the proofs, therefore, it would be impossible to determine the specific individual share in the estate to which each of the plaintiffs may be entitled.

[3] Section 1519 of the Code of Civil Procedure provides that the verdict, report, or decision in an action of ejectment must specify the estate of the plaintiff in the property recovered, and a verdict which omits to define the estate of the plaintiff is fatally defective. Shanley v. Murty, 134 App. Div. 845, 119 N. Y. Supp. 175. The term "estate" has been defined as the quantity of interest which a person has in the land. Jackson v. Parker, 9 Cow. 73; Van Rensselaer v. Poucher, 5 Denio, 35, 40. It is therefore apparent that in ejectment proof of the estate of the plaintiff is a condition precedent to his recovery in the action. This same principle was applied in Parrott v. Dyer, 105 Ga. 93, 99, 31 S. E. 417, and in Doe v. King, 6 Exch. Rep. 789, where this question was directly passed upon.

The next difficulty that confronts the plaintiff is that it does not appear that the real property in suit remained in the trustee, Purdy, at the expiration of 25 years from the time the trust was created. Walter Roche, who concededly originally owned the premises in fee, executed a deed dated July 11, 1872, to John T. McGowan, conveying to the latter as trustee for the benefit of certain creditors the reversion of this and other real estate to which Roche was entitled under a previous deed of trust by him made to Quinlan, Lynch, and Devlin, as trustees for the benefit of certain other creditors, and thereafter, on the 2d day of February, 1874, he conveyed the property in question to John T. McGowan individually. It does not appear precisely when the trust deed to McGowan was delivered, unless January 26, 1874, the date of its record, be deemed the time of its delivery and therefore of the creation of the trust. But, assuming that the date of the deed fixes the time of the creation of the trust, then the 25 years' limitation expressed in section 110 of the Real Property Law (Consol. Laws 1909, c. 50) expired on July 11, 1897. On April 9, 1897, a judgment of this court was entered in Purdy v. Lynch et al., declaring that certain real estate, including the premises in suit, was then vested in Purdy, who had been substituted as trustee in place of McGowan after the latter's death, and directing said Purdy to "sell said real estate or such portion thereof as may be necessary." Section 100 of the Real Property Law provides as follows:

"Where an estate or interest in real property has heretofore vested or shall hereafter vest in the assignee or other trustee for the benefit of creditors it shall cease at the expiration of twenty-five years from the time when the trust was created, except where a different limitation is contained in the

instrument creating the trust or is especially prescribed by law. The estate or interest remaining in the trustee or trustees shall thereupon revert to the assignor, his heirs or assignee, as if the trust had not been created."

It is argued with some plausibility by the defendants that the judgment in Purdy v. Lynch fixed the time when the real estate in suit became vested in Purdy under the McGowan trust as a result of the litigation which sought an accounting from the trustees under the trust deed to Quinlan, Lynch, and Devlin, and a conveyance of the undisposed real estate under said trust, and that the 25 years' limitation would only begin to run from April 9, 1897, the date of the entry of this judgment. But be this as it may, and without attempting to decide this point or the further question as to whether, assuming the real property vested in the trustee on July 11, 1872, there was, under the circumstances of this case, upon the expiration of the statutory period a reverter of such property as a matter of law to the heirs of John T. McGowan, a proposition as to which I have grave doubt (see Kip v. Hirsch, 103 N. Y. 565, 572, 9 N. E. 317; Green v. Heruz, 14 Misc. Rep. 474, 478, 35 N. Y. Supp. 843; N. Y. Steam Co. v. Stern, 46 Hun, 206, 208, 209; Mills v. Husson, 140 N. Y. 99, 35 N. E. 422), it is nevertheless clear that Purdy, as substituted trustee, had a right, at least from April 9, 1897, up to July 11, 1897, to sell the premises in question, and it seems to me that the burden was upon the plaintiffs to show that at the alleged expiration of the 25 years the said premises remained undisposed of by the said trustee. Section 110 of the Real Property Law states:

"The estate or interest remaining in the trustee or trustees shall thereupon revert to the assignor, his heirs or assignee, as if the trust had not been created."

The failure of proof that the real estate involved in this controversy "remained" in the trustee at the alleged expiration of the 25 years from the time the trust was created and the failure of proof respecting the heirs of the father of McGowan necessitate the dismissal of the complaint.